# FOR THE EASTERN DISTRICT OF KENTUCKY
# LEXINGTON DIVISION

|  |  |
|---|---|
| **In re:** | ) <br> ) **Chapter 11** <br> ) |
| **GenCanna Global USA, Inc.,** *et al.*, | ) **Case No. 20-50133-grs** <br> ) |
| **Debtors.** | ) <br> ) <br> ) **Honorable Gregory R. Schaaf** |

_____

|  |  |
|---|---|
| **BRAGG FARMS & CO.** | ) <br> ) |
| **Plaintiff,** | ) <br> ) |
| **v.** | ) <br> ) |
| **GENCANNA GLOBAL USA, INC.** <br> **AND MGG INVESTMENT GROUP LP,** <br> **AS COLLATERAL AGENT,** <br> **ADMINISTRATIVE, AND DIP AGENT** <br> **Defendants** | ) <br> ) **ADVERSARY NO. _____** <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT FOR DECLARATORY RELIEF, TO DETERMINE VALIDITY, PRIORITY OR EXTENT OF LIENS AND TO DETERMINE SECURED CLAIM

Plaintiff, Bragg Farms & Co. ("Bragg"), pursuant to 11 U.S.C. § 506 (the "Bankruptcy Code"), Rule 7001(2) and (9) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and § 35-9-30 and § 35-11-91 of the Alabama Code, and for its Complaint against Defendant GenCanna Global USA, Inc. ("Debtor") and MGG Investment Group LP, as Collateral, Administrative, and DIP Agent ("MGG") states and alleges as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1334 and Rule 7001 of the Bankruptcy Rules.

2. This Court has jurisdiction over the Debtor and MGG.

3. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K) and (O).

4. Venue is proper in this district and this Court pursuant to 28 U.S.C. 28 § 1409. Pursuant to Rule 7008 of the Bankruptcy Rules, Bragg consents to this Court's entry of final orders or judgments.

## PARTIES

5. Bragg is an Alabama entity.

6. Debtor is a Delaware corporation with its jointly administered case presently pending in this Court.

7. MGG is a Delaware limited partnership whose registered agent is CT Corporation System, 28 Liberty St., New York, NY 10005. In another adversary proceeding before this Court, the Debtor has stated that MGG, in its capacity as Collateral Agent and Administrative Agent under the Debtor's pre-petition debt facility and in its capacity as DIP Agent under the Debtor's post-petition financing agreement, is an indispensable party to any litigation regarding title to or the validity or priority of any lien against any assets of the Debtors [See Doc. No. 9 in Adversary Proceeding 20-5007]. Accordingly, MGG is named as a party herein so that the Court may adjudicate all disputes regarding between the parties

## FACTUAL BACKGROUND

8. On May 6, 2019, Bragg executed an Industrial Hemp Production Agreement ("Contract") with the Debtor. Pursuant to the Contract, Bragg planted, cultivated, and harvested 410 acres of hemp on land that it owned in Alabama. While the Debtor provided the seeds and/or clones to plant following execution, Bragg paid for and was responsible for providing the labor and equipment for planting, maintaining, and harvesting of the crop as well as payment of all other expenses related to the crop, including but not limited to, fertilizer and irrigation.

9. Because of confidentiality provisions in the Contract it will be filed under seal separately but is attached hereto as <u>Exhibit A</u>.

10. Pursuant to the Contract, Bragg was to be paid (i) a per acre planting fee after confirmation that the plants were in the ground and (ii) a second per acre fee for harvesting the hemp. Then, based on the weight grown times the number of acres planted, Bragg was to be paid pursuant to a formula in four monthly installments after delivery. However, this right to payment was still subject to the Debtor's right to review the crop and either accept it, reject it, downgrade its value, or reduce its weight.

11. Bragg produced 1,698 bales of hemp weighing 3,535,860 pounds pursuant to the Contract. These bales were shipped directly to Specialty Oil Extractors Manufacturer, LLC ("<u>SOE</u>") in South Carolina. These deliveries began on October 24, 2019 and ended on November 22, 2019.

12. While the per acre payments were made upon planting and upon harvest, the Contract only required the Debtor to pay Bragg for its crop upon delivery and acceptance of the entire harvest. This amount was to be paid in equal installments every thirty days following harvest.

13. The Debtor reimbursed Bragg for its share of the costs to transport the harvest to SOE in separate payments in November and December 2019 in the total amount of $132,655.00.

14. In December, the Debtor contacted Bragg and asked it to restructure the payments owed under the Contract to help the Debtor's cash flow. In exchange, the Debtor offered an additional "per acre" planted bonus. The size of the bonus depended on how Bragg deferred its payments. The Debtor has previously acknowledged that these amendments are not confidential and true and accurate copies of these amendments are attached hereto as <u>Exhibit B</u>.

15. Bragg elected to defer its second installment due in January and received payment

of $615,000.00 representing ¼ of the amount owed for its production and payment of $205,000 representing a per acre harvest payment in December. The next three payments to Bragg were due in February, March, and April with a $102,500.00 bonus payment due as well. These payments make up Bragg's outstanding claim of $1,947,500.00 ("Balance").

16.  The Debtor failed to make any additional payments on the Balance prior to the Petition Date herein. The entire Balance remains due and owing.

## PROCEDURAL HISTORY

17.  Bragg has filed this adversary to adjudicate its title to, and/or the validity and priority of its liens against the 1,698 bales of hemp (or the isolate/oil/distillate generated therefrom) ("Product") it grew on its property in 2019 against the claims of the Debtor and its pre-petition and post-petition lender, MGG.

18.  Bragg has asserted its claims to title in, and/or liens against the Product in the main case in opposition to the Debtor's debtor-in-possession financing (collectively "Objections") [See Doc. Nos. 223 and 319 filed in the Main Case]. Bragg also cross-filed one of the Objections as a Motion for Adequate Protection ("Motion for Adequate Protection") and requested a hearing on same on shortened notice [Doc. No. 320 in the Main Case].

19.  Because the Court advised it would rule on the issues raised in the Objections and Motion for Adequate Protection via a written order at the conclusion of a hearing on March 16, 2020, Bragg believed these issues were under submission [See Doc. No. 789, Page 20-21 of Official Transcript.]

20.  Because the Court advised these issues were under consideration, Bragg did not file an adversary proceeding to resolve this issues prior to the Debtor seeking approval of a sale of not only the Product, but also the majority of their assets to MGG free and clear of all liens, claims, and encumbrances. While most sales pursuant to 11 U.S.C. § 363 provide that liens on the sold

4

assets attach the proceeds of sale, the purchase offer from MGG does not contain a cash amount earmarked for creditors with lien claims.

21. The proposed sale order [Doc. No. 722 in the Main Case] further asks the Court to deprive Bragg of due process by voiding the claims asserted herein with respect to the Product without a ruling on the merits.

22. When the Court held a status conference on the proposed sale and the objection thereto on April 30, 2020, the Court stated it had no matters under consideration with respect to Bragg in response to Bragg's objection to the proposed sale order doing an "end run" around a matter under submission.

23. Given the Court's statement on April 30, 2020 that it would not be entering a ruling on the issues raised in Bragg's Objections and Motion for Adequate Protection, Bragg renoticed its previously filed Motion for Adequate Protection, which had never been ruled on, for hearing at another status conference on May 5, 2020 [Doc. No. 780]. If the Court deemed this re-notice as a new motion, Bragg respectfully requested that the Court shorten notice of the hearing to permit it to be heard on May 5th.

24. At the May 5th Status Hearing, the Court refused to grant the motion to shorten notice of hearing on the Motion for Adequate Protection.

25. In order to resolve all disputes over the Product and to reserve all its rights, Bragg has filed this adversary proceeding. Bragg proffers that it would have filed this action in March 2020 if it knew that the Court was not going to enter a written ruling on the issues raised herein.

**COUNT ONE – DECLARATORY JUDGMENT AS TO TITLE TO PRODUCT**

26. Bragg restates and re-alleges the preceding paragraphs as if fully alleged herein.

27. The Contract defines "Product" as interchangeable with the definition of "Floral Material". The Contract defines "Floral Material" as the "flowering parts of a female industrial

5

hemp plant, including the colas and seeds (but excluding the roots, stalks, and leaves."

28.     The Recitals of the Contract explicitly stated that "GenCanna desires to purchase from Grower, and Grower desires to sell to GenCanna, Product on terms and conditions set forth in this Agreement."

29.     Similarly, Section 4.4. of the Contract obligated a farmer "to grow industrial hemp plants for and to sell and deliver them GenCanna".

30.     Finally, Section 5.8 of the Contract states that "title to Product shall pass upon acceptance and payment by GenCanna for the Product."

31.     Based on the express terms of the Contract, Bragg holds title to the Product because the Debtor has failed to pay the Balance owed against same.

32.     Defendants should assert whatever interest they claim in the Product in response to this Count.

33.     Pursuant to the express terms of the Contract, Bragg is entitled to a judgment that it has title to the Product until the Balance is paid in full and that because the Debtor does not have title to the Product it cannot have ever grated MGG a lien on the Product.

**COUNT TWO – DECLARATORY JUDGMENT AS TO VALIDITY, PERFECTION, AND PRIORITY OF LIEN**

34.     Bragg restates and re-alleges the preceding paragraphs as if fully alleged herein.

35.     Alabama Code § 35-9-30 ("Landlord Lien") states

A landlord has a lien, which is paramount to, and has preference over, all other liens, on the crop grown on rented lands for rent for the current year, and for advances made in money, or other thing of value, either by him directly, or by another at his instance or request for which he became legally bound or liable at or before the time such advances were made, for the sustenance or well-being of the tenant or his family, or for preparing the ground for cultivation, or for cultivating, gathering, saving, handling, or preparing the crop for market; and also on all articles advanced, and on all property purchased with money advanced or obtained by barter in exchange for articles advanced, for the aggregate price or value of such articles and property.

6

36. Alabama Code § 35-11-910 ("Labor Lien") states

Agricultural laborers and superintendents of plantations shall have a lien upon the crops grown during the current year in and about which they are employed, for the hire and wages due them for labor and services rendered by them in and about the cultivation of such crops under any contract for such labor and services; but such liens shall be subordinate to the landlord's lien for rent and advances, and to any other lien for supplies furnished to make the crops.

37. To fulfill its obligations under the Contract, Bragg incurred all expenses required to plant, tend, harvest and deliver the Product to the Debtors' agent, SOE.

38. Because the Debtors have failed to pay the Balance, the repayment of these expenses related to planting, tending, harvesting, and delivery of the Product are secured by liens against the Product pursuant to the Landlord Lien and Labor Lien.

39. The Landlord Lien and Labor Lien are not "agricultural liens" as that term is defined in Section 102 of Article 9. Accordingly, liens asserted pursuant to these statutes are not subject to the perfection and priority system of Article 9.

40. The Landlord Lien and Labor Lien are first liens against any crop subject to them that are perfected by relating back to the beginning of the tenancy or labor.

41. Because Bragg began performance under the Contract following execution in early May 2019, its liens against the Product attached and were perfected before the alleged perfection of the inferior lien of MGG on the Product occurred on or about June 24, 2019.

42. Because the execution of the Contract predates the security agreement between MGG and the Debtor, MGG is charged with constructive knowledge of Bragg's statutory lien rights under Alabama law as it knew or should have known that Bragg could assert these statutory liens if the Balance was not paid.

43. Alabama law is clear that the validity, priority, or status of a lien granted under the Landlord Lien or Labor Lien does not depend on possession of the Product.

7

44.     While the Landlord Lien and Labor Lien do not require the lienholder to take any action to perfect the lien, Bragg timely provided notice and perfection of its liens pursuant to 11 U.S.C. § 546(b) via a letter to the Debtor and MGG on March 10, 2020.  A true and accurate copy of this letter is attached hereto as <u>Exhibit C</u>.

45.     The liens of Bragg in the Product are valid and perfected in the Product and have priority over any interest that the Debtor or MGG may have in the Product.

46.     The Debtor and MGG obtained court approval of the Debtor-in-Possession financing in the main case by promising that this financing would not prime any valid and perfected lien on any property of the Debtor.

47.     Said Defendants should come forward and assert whatever interest they have in the Product or be forever barred.

### **COUNT THREE– DETERMINATION OF SECURED CLAIM**

47.     Bragg restates and re-alleges the preceding paragraphs as if fully alleged herein.

48.     The Debtor has scheduled Bragg as holding an allowed claim equal to the Balance [See Creditor 2.61 on Schedule E of Debtors' Amended Schedules E and F [Doc. No. 677].

49.     Once the validity, perfection, and priority of Bragg's liens pursuant to the Landlord Lien and Labor Statute have been determined, Bragg respectfully requests that the Court determine what portion of the Balance is secured by liens against the Product.

50.     As noted above, Bragg incurred substantial expenses to plant, tend, grow, and harvest the Product.  These expenditures exceed $2,000,000.00, and the repayment of most of this amount is secured by liens provided to Bragg pursuant to the Landlord and Labor Statutes.

51.     Bragg's expenditures range from wages and expenses for contract labor to plant, to weed, and to harvest the labor, to the cost to rent equipment to prepare the ground for planting and to harvest and bale the hemp, to the cost of fertilizer and water, and the unreimbursed cost of

shipment of the Product to SOE. Repayment of these types of expenses are secured by a liens against the Product pursuant to the Landlord and Labor Statute.

52. Bragg respectfully requests that the Court determine what portion of the expenses it paid or incurred are secured by liens on the Product pursuant to the Landlord and Labor Statute.

53. Bragg then requests that the Court determine the value of the Product including any increase in value attributable to processing or refining to determine its secured claim pursuant to 11 U.S.C. 506.

WHEREFORE, Bragg respectfully requests that the Court enter judgment in its favor against both the Debtor and MGG on all counts herein and award it such other relief as it just and proper under the Bankruptcy Code and Bankruptcy Rules.

Respectfully submitted,

FROST BROWN TODD LLC

 /s/ Tyler Powell
KY Bar No. 90520
250 West Main Street, Suite 2800
Lexington, Kentucky 40507
Tel: (859) 231-0000
Fax: (859) 231-0011
E-mail: tpowell@fbtlaw.com
**ATTORNEYS FOR CREDITOR, BRAGG FARMS & CO.**

0144358.0730320    4815-5872-0187v1